# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

# 05   11234 NMG

EUGENE OKECHUKWU AGINA, #A29296454       )

PETITIONER                      MAGISTRATE JUDGE _____

)
)
v.                                        )          CIVIL NO._____
)
)
MICHAEL CHERTOFF, SECRETARY OF            )
HOMELAND SECURITY; BRUCE                  )
CHADBOURNE, INTERIM FIELD OFFICE          )
DIRECTOR FOR DETENTION AND REMOVAL )              RECEIPT # _____
BOSTON FIELD OFFICE BUREAU OF             )          AMOUNT $_____
IMMIGRATION AND CUSTOMS                   )          SUMMONS ISSUED____
ENFORCEMENT; THE BUREAU OF                )          LOCAL RULE 4.1___
IMMIGRATION AND CUSTOMS                   )          WAIVER FORM_____
ENFORCEMENT; AND ANDREA J. CABRAL         )          MCF ISSUED____
WARDEN OF SUFFOLK COUNTY HOUSE OF         )          BY DPTY. CLK._____
CORRECTION                                )          DATE_____
)
RESPONDENTS                 )

## PETITION OF A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2241

Petitioner, Eugene Agina, hereby petitions this court for a writ of habeas corpus to
remedy his unlawful detention and to enjoin his continued unlawful detention by the
respondents. In support of this petition and complaint for injustice relief, petitioner
alleges as follows:

## PARTIES

1.    Petitioner, Eugene Agina, overstayed his visiting visa into the United States
      and a native and citizen of Nigeria. Mr. Agina was ordered deported on July
      11, 1994, was taken into immigration custody on April 29, 2004. Petitioner
      has been detained by the Bureau of Immigration and Customs Enforcement
      (ICE) for over six (6) months.

1

2.  Respondent, Michael Chertoff, Secretary of Homeland Security, is the Attorney General of the Unites States and is responsible for the administration of ICE and the implementation and enforcement of the immigration laws. As such, he is the ultimate legal custodian of the petitioner.

3.  Respondent, Bruce Chadbourne, is the Interim Field Office Director of Detention and Removal, Boston Field Office, Bureau of Immigration and Customs Enforcement, Department of Homeland Security. As such, he is the local ICE official who has immediate custody of the petitioner.

4.  Respondent Department of Homeland Security is the Agency charged with implementing and enforcing the immigrations laws.

5.  Respondent, Kathleen M. Dennehy is Acting Commissioner, Massachusetts Department of Correction, Massachusetts. Because ICE contracts with State Prisons such as Suffolk County Jail in Suffolk, Massachusetts to House immigration detainees, such as Petitioner, she has immediate custody of the Petitioner.

## Custody

6.  Petitioner is detained at the Suffolk County Jail in Suffolk, Massachusetts. ICE has contracted with the Suffolk Jail to house immigration detainees, such as Mr. Agina. Petitioner is under the direct control of Respondents and their agents.

2

## Jurisdiction

7.    This action arises under the constitution of the United States, the Immigration
and Nationality Act (INA), 8 U.S.C. 1101 et seq. as amended by the Illegal
Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA),
Pub.L.no.104-208, 110 Stat. 1570, and the Administrative Procedure Act
(APA), 5 U.S.C. 701 et seq. This court has jurisdiction under 28 U.S.C. 2241,
Art. I 9, cl.2 of the United States Constitution ("Suspension Clause"), and 28
U.S.C. 1331, as the Petitioner is presently in custody under color of the
Authority of the United States, and such custody is in violation of the
Constitution, Law, Treaties of the United States. Sec Zadvydas vs. Davis 533
U.S. 678, 121 S.CT. 2491 (2001).

## Venue

8.    Venue lies in the District of Massachusetts because Eugene Agina is currently
detained at Suffolk County Jail. Venue in the District of Massachusetts is also
proper because petitioner is in the custody of Respondent, Bruce Chadbourne,
Interim Field Office Director of this district, which encompasses Suffolk
County Jail. 28 U.S.C. 1391

## Exhaustion of Remedies

9.    Petitioner has exhausted his Administrative Remedies to the extent required
by law, and his only remedy is by way of this judicial action. After the
Supreme Court decision in Zadvydas, the Department of Justice issued
regulations governing the custody of aliens ordered removed. See 8 CFR
241.4. Petitioner was ordered deported on July 11, 1994, and was taken into
ICE custody on April 29, 2004. At his 90-day Custody Review on July 14,
2004, ICE decided to continue his detention. See ex.1. Petitioner has not
received any response from ICE's headquarters Post-Detention Unit
(HQPDU), despite a formal request for release and more than six (6) months

3

of post-order custody. See ex.2. The custody review regulations do not
provide for appeal from a HQPDU custody review decision. See 8 CFR
241(d).

10. No statutory exhaustion requirements apply to petitioner's claim of unlawful
detention.

## Statement of Facts

### A. Background

11. Petitioner, Eugene Agina, was born in Nigeria on July 6, 1960. On March 16,
1991, at the age of 30, Petitioner entered the United States on a visitor's visa
and on July 11, 1994, he was ordered removed from the United States by an
immigration judge. A warrant was issued for Petitioner's removal, but on the
date he was to be acquired by the Immigration Department from the State
government where he was held, the immigration advised that there was no
fund to effect Petitioner's removal. Accordingly, Petitioner's deportation
warrant expired and he was allowed back into the society.

12. On December 7, 1993, Eugene Agina was convicted of the offense of
maintaining a dwelling for using, keeping, or selling of controlled substance
in the State of North Carolina and was sentenced to 5 years after pleading to
"No Contest" and he served 24 months (Statute No. 90-108, N.C.) on
February 4, 1994, INS charged Eugene Agina with deing deportable due to the
conviction and for overstaying under Sections 241(a)(1)(b) and
241(a)(2)(b)(i). Prior to Petitioner's present ordeal, Petitioner was residing in
Chicago, Illinois, with his American-citizen wife. Subsequently, thereafter,
Petitioner was convicted of a drug offense and imprisoned. While
incarcerated, he was taken from F.C.I. Elkton, Ohio, to a hospital in Boston so
that surgery would be performed on his hip. After a complete replacement
surgery and a later complication, while in rehabilitation, Petitioner's Federal

4

sentence expired and he was transferred into the custody of the Immigration and Customs Enforcement of the Homeland Security Department, based on his previous removal order. Petition did not appeal the order of the Immigration judge, ordering him to be removed to Nigeria.

13. On April 29, 2004, ICE took Eugene Agina into custody to await his deportation to Nigeria. He has been in immigration detention with a final order since then, for a period of eight (8) months.

   B. "90-day" and six-month (6-month) Custody Reviews

14. ICE first reviewed Eugene Agina's detention status on or about July 14, 2004, before the 90-day removal period pursuant to post-order custody review procedures per 8 C.F.R. §241.4. In a letter dated July 14, 2004, ICE denied Eugene Agina's request for release stating that they are making attempts to repatriate petitioner by requesting the Government of Nigeria to approve petitioner's case for final removal; that the Government of Nigeria regularly approves cases for removal; and that there is no indication at this time that petitioner's case will not be approved. See – ex.1.

15. As a result of the continued detention, Eugene Agina, on September 6, 2004, wrote a letter to the ICE requesting a transfer of custody review to the HQPDU. See ex.2. On September 8, 2004, the ICE issued a "Notice of Failure to Comply" letter, extending petitioner's detention incumbent upon his alleged cooperation with the Nigerian Consulate in providing travel documents. Furthermore, the ICE claimed that despite petitioner's deteriorating problems post hip surgery, that petitioner had been medically cleared to travel. Finally, the ICE threatened that if petitioner fails to cooperate with obtaining travel documents, he would be criminally prosecuted under 8 U.S.C. § 1253(a), and on the same vein warned that "[I]f [Petitioner] ha[s] not been released or removed from the United States by October 29,

2004, jurisdiction of the custody decision will be transferred to the
Headquarters Post-order Unit (HQPDU)" in Washington, D.C. see ex.3.

16.     Eleven months after petitioner was taken into custody, HQPDU is yet to
        conduct petitioner's review despite his request for one. On November 3,
        2004, at about 10:45 A.M., Petitioner was informed by Miss Claudia English
        that the Nigerian Consulate has refused to issue any travel documents due to
        my (Petitioner's) medical issue. Nonetheless, she also told Petitioner that he
        would not be released because she believes that Petitioner has no valid
        medical issue. Nor is she interested in any inadequate medical treatment for
        the Petitioner in Nigeria.

    C.  Eleven months later: ICE's inability to show that Petitioner's deportation in
        "reasonably foreseeable" despite his full cooperation.

17.     In the five months that have passed since Petitioner's last custody review, ICE
        has not notified Eugene Agina of any progress in his repatriation.

18.     To Petitioner's knowledge, the Government of Nigeria has not issued travel
        documents for him. Indeed, neither ICE nor the Nigerian Government has
        provided any indication that Nigeria would accept Petitioner in the reasonably
        foreseeable future.[1]

---

[1] In 2003, the Immigration and Naturalization Service (INS) ceased to exist and its detention and removal
authority was transferred to the Bureau of Immigration and Customs Enforcement (ICE), which is part of
the Department of Homeland Security (DHS).

Though under Zadvydas, Eugene Agina (Petitioner) has the right to be free from indefinite detention
regardless of whether ICE considers him a danger to the community or a flight risk, Eugene Agina
(Petitioner) contests ICE determination of dangerousness and flight risk. I am not a danger to the
community nor am I a flight risk. There is no evidence that I have ever posed a threat to another person or
property. The crimes I was convicted of were not crimes of violence or theft. I feel remorse for my
participation in those acts and I will never allow that to happen in my life again. Because I realized the
magnitude of the pains I caused to both my family and the society. I did not have a single disciplinary
report throughout my incarceration. Secondly, I took further steps in making sure I completed many
rehabilitative classes in Prison, including drug programs, religious counseling and vocations. See
Certificates attached.

19.    ICE never asserted Petitioner's failure to cooperate until two days after the Petitioner's request for the transfer of his Post-order file to the HQPDU. That is almost five (5) months after the Petitioner was taken into ICE custody. On September 6, 2004, Petitioner wrote a letter to the ICE requesting a transfer of review too the HQPDU. On September 8, 2004, the ICE issued a "Notice of Failure Agina never for once refused to speak with the Nigerian Consulate whenever arrangement was made for that. In fact, Petitioner had many phone conversations with both Mrs. Okaa and Mr. Ahmed Umar at the Nigerian Consulate in New York and Washington D.C, respectively, while at the Suffolk County and Bristol County jails. They (Mrs. Okaa and Mr. Umar) made it clear to both Miss English and Mr. Greenbaum on different occasions that travel documents would not be issued for the Petitioner because of his medical problems. Also, on July 14, 2004, at about 9:00 – 9:20 A.M. at the Bristol County Jail, Agent O'Neil interviewed the Petitioner in order to confirm Petitioner's personal information for travel documents. Right after the interview, Agent O'Neil called Miss English's office and left a message on her voicemail, affirming Petitioner's cooperation. Agent O'Neil also stated that the Petitioner answered all her questions to the best of his recollection.

    D. ICE has offered no evidence to suggest that repatriation in Petitioner's individual case is reasonably foreseeable now.

20.    Petitioner believes that his removal is not reasonably foreseeable because the Nigerian Consulates have categorically made it clear that they will not issue any travel documents for the Petitioner, citing the lack of/inadequate medical (their concern) treatment for the complications resulting from the Petitioner's total hip replacement surgery while in the custody of the Federal Bureau of Prisons. Also, on November 3, 2004, at about 10:45 A.M., Petitioner was informed by Miss English that he would not be released despite the fact that the Nigerian Consulates have denied repeated requests for travel documents

7

for the Petitioner. In fact, the most recent attempt by Mr. Greenbaum on December 8, 2004, was denied by Mr. Umar at the Nigerian Consulate in Washington, D.C. based on the same medical grounds. In fact, on Tuesday April 12, 2005, the Petitioner was transported to Batavia, New York, for an onward removal to Nigeria. However, on Wednesday April 13, 2005, Mr. Umar with the Nigerian Consulate in Washington, D.C. again declined to issue traveling documents on the grounds of Petitioner's hip replacements surgery complications. The Nigerian Consulate representative and a United States INS representative were present during the physical examination of the Petitioner before reaching this conclusion. Due to the extreme pain the Petitioner was experiencing, the two representatives (Nigerian Consulate representative and the United States INS representative) saw to it that the Petitioner was given a heavy dose of painkiller to alleviate the pain.

## Legal Framework for Relief Sought

21. In Zadvydas, the Supreme Court held that 8 U.S.C. §1231(a)(6), when "read in light of the constitution's demands, limited an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States" id., 121 s. ct. at 2498. A habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal. Id. at 2504. If the individual's removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute" id.

22. In determining the length of a reasonable removal period, the court adopted a presumptively reasonable period of detention of six (6) months. Id at 2504. After six months, the Government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future". See Zhou Vs Farquharson, 2001 U.S. Dist. Lexis 18239, *2 - *3 (D. Mass. October 19, 2001) (Quoting and

8

summarizing Zadvydas). Moreover, "[f]or detention to remain, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future', conversely, would have to shrink." Zadvydas, 121 s. ct. at 2505. ICE's administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of any alien's removal in a reasonably foreseeable future. See 8 C.F.R. §241.4(k)(2)(ii)

23.    Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the Government's burden to establish that an alien Petitioner will be deported within the reasonably foreseeable future. See Thompson Vs. INS, 2002 U.S. Dist. Lexis – 23936(e.d.la. September 16, 2002) (Government failed to show that alien's deportation to Guyana was reasonably foreseeable where the Government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the application for travel documents that INS and the Petitioner had requested); Kacanic Vs. Elwood, 2001 U.S. Dist. Lexis 21848 at *14 (e.d. Penn. November 8, 2002) (Government's reliance on data concerning removals of other aliens to Yugoslavia did not satisfy Zadvydas because Government failed to give information about the number of aliens that were denied travel papers and did not provide individualized information about the removed aliens that would allow "a meaningful comparison" of the removed aliens to the Petitioner); Ablahad Vs. Ashcroft, 2002 U.S. Dist. Lexis 17405 at *4 (N.D. Ill. September 6, 2002) (Evidence that aliens have been deported to Petitioner's country is not sufficient to carry the Government's burden under Zadvydas). Rather, for the Government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide some meaningful evidence particular to the individual Petitioner's case. Compare Thompson, Kacanic, and Ablahad with Khan Vs. Fasano, 194 F. Supp.2d 1134 (S.D. Cal. 2001) (Eight month detention following final order was not unreasonable where INS requested travel documents for Petitioner, Pakistani

9

Consulate indicated that Petitioner's travel document application had been forwarded to the appropriate Ministry, INS had successfully repatriated 476 Pakistani nationals during 2001, suggesting that there were no "institutional barrier" to successful repatriation, and a meeting was scheduled with Pakistani Government to discuss Petitioner's case.

24.    An alien who has been detained beyond the presumptive six months and should be released where the Government is unable to present documented confirmation that the foreign Government at issue will agree to accept the particular individual in question. See Agbada Vs. John Ashcroft, 2002 U.S. Dist. Lexis 15797 (D. Mass August 22, 2002) (Court "will likely grant" Habeas petition after fourteen months if ICE "is unable to present document confirmation that the Nigerian Government has agreed to [Petitioner's] repatriation"); Zhou, 2001 U.S. Dist. Lexis 18239 (ordering that the writ of habeas corpus issue within 60 days, given petitioner's 13-month detention and the INS's inability to assure the court that the paperwork from China was on it's way); Abdu Vs. Ashcroft, 2002 U.S. Dist. Lexis 19050 at *7 (W. D. Wash. February 28, 2002) (Government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future); Kacanic, 2001 U.S. Dist. Lexis 21848 (where alien had been detained for one year, lack of a definitive answer from foreign embassy as to issuance of travel documents, or any indication that a definitive answer was likely, showed that removal was not reasonably foreseeable); Mohammed Vs. Ashcroft, 2002 U.S. Dist. Lexis 16179 at *7 (w. d. Wash. April 15, 2002) (granting writ of habeas where lack of definite answer from the foreign consulate indicated that no removal was likely in the reasonably foreseeable future). The Government's accusation that petitioner was being uncooperative in providing travel documents is unfounded. Petitioner informed his country's ambassador of the pending legal and medical concerns that Petitioner has, and

such truthful representation could not constitute lack of cooperation. See Seretse –Khama Vs. Ashcroft, 215 f. Supp.2d. 37, 50-53 (D. D. C. 2002). A petitioner's truthful statement (such as expressing that he did not wish to return to his country of origin), which is later adopted by the country of origin as a reason for not wanting to repatriate that alien, is not a example of refusal to cooperate under 1231 (a)(1)(c), and cannot be used as ground for extending post-removal detention.)

# Claims for Relief

## Count One

### Statutory Violation

25.     Petitioner re-alleges and incorporates by reference paragraphs 1 through 24 above.

26.     Petitioner's continued detention by the Respondents violates INA §241(a)(6), as interpreted in Zadvydas. Petitioner's six months presumptively reasonable period for continued removal efforts passed two months ago. For the reasons outlined above in Paragraph one to 24, Petitioner's removal to Nigeria is not reasonably foreseeable. The Supreme Court held in Zadvydas that the continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonable and in violation of INA §241.

## Count two

### Substantive Due Process Violation

27.     Petitioner re-alleges and incorporates by reference paragraph one through 26 above.

11

28. Petitioner's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. The due process clause requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling Government interest. While the Respondents would have a compelling Government interest in detaining Petitioner in order to effect his deportation, that interest does not exist if Eugene Agina cannot be deported. The Supreme Court in Zadvydas thus interpreted INA §241 to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the Government's articulated interest – to effect the alien's removal.

## Count three

### Procedural Due Process Violation

29. Petitioner re-alleges and incorporates by reference Paragraph one through 28 above.

30. Under the due process clause of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Petitioner in this case has been denied the opportunity, as there is no administrative mechanism in place for the Petitioner to demand a decision, made, or appeal a custody decision that violates Zadvydas.

### Prayer for Relief

Wherefore, Petitioner prays that this court grant the following relief:

1. Assume jurisdiction over this matter;

2. Grant Petitioner a writ of *habeas corpus* directing the Respondents to immediately release the Petitioner from custody;

3. Order Respondent to refrain from transferring the Petitioner out of the jurisdiction of ICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondents' custody; and

4. Grant any other and further relief, which this deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

Respectfully submitted this _____ day of _____, 2005.

## Certificate of Service

I, Eugene Agina, certify that a true copy of the above document (Petition for Writ of
Habeas Corpus) together with attached documents, were served on _____ upon
the following:

Frank Crowley
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

By placing a copy of the above in the mail system at the facility where I am detained.



**U.S. Department of . Jmeland Security**

Bureau of Immigration and Customs Enforcement Detention &
Removal Operations
New England Field Division

JFK  Federal Building
Government Center
Boston, Ma. 02203

Name:  AGINA, Eugene
A#:      29 296 454

C/O Suffolk House of Corrections

# Notice to Alien of File Custody Review

You are detained in the custody of the Immigration and Naturalization Service (INS) and you are required to cooperate
with the INS in effecting your removal from the United States.  If the INS has not removed you from the United States
within the removal period as set forth in INA 241(a) (normally  90-days) of either:  1) your entering INS custody with a
final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in INS custody,
the INS Deciding Official will review your case for consideration of release on an Order of Supervision.  Release, however,
is dependent on your demonstrating to the satisfaction of the Attorney General that you **will not** pose a danger to the
community and **will not** present a flight risk.

Your custody status will be reviewed on or about: **(07/29/04)** .  The Deciding Official may consider, but is not limited
to considering the following:

1.   Criminal convictions and criminal conduct;
2.   Other criminal  and immigration history;
3.   Sentence(s) imposed and time actually served;
4.   History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5.   Probation history;
6.   Disciplinary problems while incarcerated;
7.   Evidence of rehabilitative effort or recidivism;
8.   Equities in the United States;
9.   Cooperation in obtaining your travel document.
10. Any available mental health reports.

You may submit any documentation you wish to be reviewed in support of your release, prior to the date listed above,
to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3).  An
attorney or other person may submit materials on your behalf.  The district director will notify you of the decision in your
case.  Attached to this notice a list of free or low cost legal representatives who may be able to provide assistance to you in
preparing your case.

**U.S. Department of Homeland Security**
Bureau of Immigration and Customs Enforcement
Attn: POCR Unit
JFK Federal Building, Government Center
Boston, Ma  02203

METHOD OF SERVICE

I certify that this form was provided to the alien by:              (Hand)                    (Institution Mail)
( ) CC: Attorney of Record or Designated Representative
( ) CC: A-file

_Timothy Stevens_                          Timothy Stevens                      _06/16/04__
Signature of Officer                        Print Name of Officer                      Date



**U.S. Department of Homeland Security**
Immigration & Customs Enforcement
Detention & Removal Operations
New England Field Division

JFK Federal Building
Government Center
Boston, MA 02203

**AGINA, Eugene** A29296454
C/O SUFFOLK COUNTY HofC

Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of the Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview and consideration of any information you submitted to the reviewing officials.

You are a native and citizen of Nigeria who entered the United States on March 16,1991 as a visitor. On July 11, 1994 you were ordered removed from the United States by an Immigration Judge.

Subsequent to receipt of you final order of removal ICE has been making attempts to repatriate you by requesting the Government of Nigeria to approve your case for final removals. The Government of Nigeria regularly approves cases for removal and there is no indication at this time that your case will not be approved.

Based on the above, you are to remain in ICE custody pending your removal from the United States. You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with the ICE's efforts to remove you by taking whatever actions the ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

If you have not been released or removed from the United States by 10-29-04 Jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU), 801 I St. NW, Washington, DC 20536. HQPDU will make a final determination regarding your custody.

_____
Bruce B. Chadbourne
Field Office Director

07-14-04
Date



**U.S. Department of Homeland Security**
Bureau of Immigration & Customs Enforcement
Detention and Removal Operations
New England Field Division

JFK Federal Building
Government Center
Boston, MA 02203

09-08-2004

**AGINA, Eugene**   A29296454
Suffolk County Hof C

## Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of the Bureau of Immigration and Customs Enforcement (Bureau) at this time. This decision has been made based on a review of your file and/or your personal interview and consideration of any information you submitted to the Bureau's reviewing officials.

On 04-29-0403, you were advised, via form I-229(a) and Instruction Sheet to Alien, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel document. The burden to obtain a travel document for your removal does not solely rest with the Service. Pursuant to Section 241(a)(1)(C) of the Immigration and Nationality Act (INA), you are required to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States. If you fail to make these efforts, Section 241(a)(1)(C) allows for the extension of the removal period. On several occasions you have informed the Nigerian Consulate that you have pending litigation when you have not. You have informed the Nigerian consulate that you are unable to travel due to a medical condition. You were medically cleared for travel. As you refused to cooperate and be honest with your consulate, you have failed to comply with your obligation and are acting to prevent your removal from the United States. The removal period is therefore extended in your case.

As you are still within the removal period, you are to remain in Bureau custody until you demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with the Bureau's efforts to remove you.

You are also advised that continued willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, will subject you to criminal prosecution under 8 USC Section 1253(a).

_FCO_

Signature and Title of Deciding Official

09-08-2004  9/8/04
Date

**Bruce E. Chadbourne**
**Interim Field Office Director**

Affidavit of Support

I, Lawrence N. Aginar, declare as follows:

I am writing this declaration on behalf of my brother, Mr. Eugene Agina, #A29296454. I am a naturalized United States citizen for nearly 10 years now. I reside at 1944 North Tallyrand, Wichita, Kansas, 67206-1018. My home telephone number is 316-618-1980. I graduated from Wichita State University in Business Finance degree. Since graduating, I have worked primarily in the financial sector. My first major employment was with Commerce Bank (formerly Union National Bank), where I began my banking career as a part-time teller before working my way up to a residential real estate loan officer. I worked for Commerce Bank for nearly nine years – from November 25, 1991 to June 30, 2000. After Commerce Bank, I worked for Wells Fargo Financial Acceptance for about three months before joining the Office of the Comptroller of the Currency (OCC) on January 29, 2001. The OCC is a division of the United States Treasury Department and I worked with this prestigious office for three years as an Associate National Bank Examiner. I left on January 20, 2004, to join Twin Lakes National Bank as a Compliance Officer. In this position, I manage the compliance with U.S. Laws, rules, and regulations at this bank and a sister bank, Southwest National Bank, also owned by the same person.

I have known my brother all my life and I know him to be a very good person. He is generous and willing to help anyone. He is good-hearted, kind, and hard-working. I gave him the first car (a kit car called Puma, made in Brazil) which he sold to start his business of selling cars. He was doing very well selling cars and before his present situation, Eugene and me were discussing opening a small dealership in Wichita. One other business we discussed is a dry-cleaning business, which remains my number one priority in terms of things to do in the next seven years (that was back in 1999).

I can say without a doubt that I know Eugene is sad for what he did. I know this because we have talked about it. You see, you have to understand the kind of family Eugene and I come: We are not rich, but we had each other and our *family name*. I know these days, it may not mean a lot to most people, but within the culture Eugene and I grew up, family name is all you have. Family name determines whether other families can marry into the family, or vice versa; whether you get invited to events. In fact, the family standing (which is really the family name) determines how others relate to you. Because of this, families go to a great extent to protect or regain the family honor. Since our dad died in late 80's, Eugene's fate for all intent and purposes, depends on others in the family, who are eager to regain the family honor. I know Eugene is sorry for what happened and I know he is a changed person today. He is going to church and I understand he has had some counseling. Over the past five years, he has acquired some job experiences which may be useful for what I have been hoping to accomplish – own a dry cleaning business. Last December (specifically, December 1, 2003), I missed an opportunity to purchase a dry cleaning business simply because I could not find someone trustworthy to run it for me. The plan at the time was to find someone that would run the business while I keep my job for a while until the business picks up. It may sound selfish, but having Eugene

with me will be an answer to my prayers.   I could open the dry cleaning business within a few months if he would be around to run it.  He would live in my house, all bills paid, so he would not have to worry about any expenses.

I know that Eugene is changed because we have spoken about his mistakes.  I know he wants more than anything to stay in United States because of the consequences he faces if he is taken home.  **I will pledge my citizenship for his stay here in the U.S.**  That's how certain I am of his character.   Please find it in your heart to show mercy on him and let him stay, please.

If you have any questions about this declaration, please feel free to contact me at any time.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2004

Lawrence N. Aginar

**Vikings Quality Car Sales**
**5447 Covington Highway**
**Stone Mountain, GA 30035**
**770-322-6869**

**Vikings Quality Car Sales**
**5447 Covington Highway**
**Stone Mountain, GA 30035**
**770-322-6869**

U. S. Department of Homeland Security
Bureau of Immigration and Customs Enforcement
Attn: POCR Unit
JFK Federal Building, Government Center
Boston, MA 02203

**Ref: Agina Eugene**
**A#: 29296454**

July 12, 2004

Please accept this letter of support and testimony of character for Mr. Agina Eugene, who is currently in your custody and is scheduled for a review hearing on July 29, 2004.

I have known Mr. Agina all my life; we grew up in the same neighborhood in Nigeria. I am a married father of two beautiful girls, and my wife has just graduated from Pharmacy school. I am a business owner here in DeKalb county Georgia, and have been for the past six years. I own a pre-owned car dealership.

Where as I do not condone what Mr. Agina did, I am however, offering myself and my services to assist him during this transition period. My willingness to provide such support stems from my conversions with him over an expanded period of time. He has made tremendous changes in his life, and he is determined to use this experience to contribute positively to this society, also to use his life as an example to other young people. Mr. Agina is a good man who did bad thing, I believe that with his extended family support, he will overcome these challenges and become a productive member of this society. We will be willing to provide him with housing and employment upon release to assist him in his transition.

If you have any question, please contact me at 678-873-2289

Respectfully Submitted

Prince Okonkwo

I Joyce McNeil, declare as follows:

My name is Joyce McNeil, I am writing this declaration on behalf of Mr. Eugene Agina A29296454.

I am a natural born U.S. citizen. I reside at 1401 E. 55th 915N Chicago, IL 60615. My telephone is 773-684-0076. I am a Chicago Public School teacher.

I have known Mr. Agina since 1991. I met him at a barbeque at the home of my cousin, Denise Rodgers. He was very kind to my uncle James Rodgers who was a senior citizen at the time. Everyone was his friend. Each time I met him he was kind and talked about the importance of my job for the youth, and was very humorous.

I believe Eugene Agina is a person of good character. His actions were not true to his character. He truly understands how to be a good friend. He would always come when you needed him. This could be during sickness or death in your family, or just give needed advice.

I know Eugene Agina is sorry for what he did because inside he is a kind and compassionate person. I also know that he realizes he must change his life. He's taken the first step. He said he was sorry.

I know more than anything he wants to change his life. The most important people to Eugene Agina is his family and friends. I know that he wants more than anything to continue living in the U.S. and leading a new and productive life working in his brother's business.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 7/5/2004

Joyce McNeil

I Damian J. Rodgers-Williams, declare as follows:

My name is Damian J Rodgers-Williams, I am writing this declaration on behalf of Mr. Eugene Agina A29296454.

I am a natural born U.S. citizen. I live with my mother, Denise Rodgers, at 3751 W. 80th St Chicago, IL 60652. My telephone is 773-581-9499. I am a 2002 graduate of Bogan Computer Technical High School in Chicago. I am currently entering my third year as an Engineering major at Southern Illinois University Edwardsville.

I have known Eugene since 1994. I met him at the home of my mother, Denise Rodgers. I remember that he struck me as quite a reserved individual. However, once the conversation shifted to sports (soccer in particular), he opened like a book. Each time he would visit, we would always take time to talk sports.

He also would constantly stress how important he believed an education was whenever I saw him. This affirms my belief that Eugene is a man of rock solid character. If ever I needed an encouraging word or had a question that I couldn't answer, I could always call Eugene. As one of the most warm and affable people I have ever met, I know that his actions betrayed his true character.

Since his incarceration, he has often called to check up on me, and would warn me to "stay in school and watch out for girls." I know Eugene regrets dearly the mistakes he has made and he realizes he must change his life. By saying that he was sorry, I believe he is well on his way.

The people most dear to Eugene are his family and friends. I know that he wants to continue living in the U.S. more than anything and, with the help of his brother, lead a new and productive life.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 07/15/04

Damian J. Rodgers-Williams

I Denise E. Rodgers-Cole, declare as follows:

My name is Denise E. Rodgers-Cole, I am writing this declaration on behalf of Mr. Eugene Agina A29296454.

I am a natural born U.S. citizen. I reside at 3751 W. 80th St Chicago, IL 60652. My telephone is 773-581-9499. I am a Medical Records Technician.

I have known Mr. Agina since 1991.I met him at our church fundraiser. He was very devoted and had a take-charge attitude. As a result of seeing him in church and us being on several of the same committees together, we developed a friendship.

Eugene often stopped by my home to visit and see how we were doing. I always made sure to invite him to any special occasions because he was always the life of the party. He is truly a very special person and he always put others needs before his own. I took the death of my father James Rodgers in 2001 very hard. Eugene was incarcerated at the time, but he was always there with a phone call, a card, or letter with prayers or soothing words.

This just proves Eugene is a person with impeccable character. His favorite saying is "where there is life, there is hope". I know Eugene is truly sorry for what he has done, as he has told me on several occasions.

I know the most important things to Eugene are his family and friends and becoming the most productive citizen he can. I know he wants very dearly to continue living in the U.S. and help make his brother's business a success. I know Eugene will jump in with both feet and make that happen.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 2-15-04

Denise E. Rodgers-Cole

# Certificate of Achievement

*This certificate is Presented to*

*Eugene Agina*

*in recongnition of completion of*

ACE  Stock Class

October 2, 2002

R. J. Fitzsimmons, ACE Coordinator

Merit Award

# DDC Testing Center

## Certificate of Achievement

On this day, April 14, 2004,

**Eugene Agina**

achieved a score of 84% on the

**PowerPoint 2000** exam.

Authorized Signature

FMC DEVENS

HEALTH PROMOTION DISEASE PREVENTION

## CERTIFICATE OF COMPLETION

This is to certify that

# Eugene Agina

UNIT-J-B
REGISTRATION No.:09094-041

Successfully completed a training course on

## OSTEOPOROSIS/ARTHRITIS

May 29, 2003

_S. Mitchell_, MPT

S. Mitchell, Physical Therapist

6/2/03

Date

# Certificate of Appreciation

*Presented To*

*Brother Eugene Agina*

*From the Church in Elkton, Ohio*

*This is in recognition of your efforts and contributions to the Church in Elkton, Ohio. Your work as a participating Christian has greatly contributed to the well being and strength of the Body of Christ. You are celebrated as a gift from God this Christmas Season. May God's richest blessings continually be yours.*

*For God is not unrighteous to forget your labor of love, which you have showed toward his name, in that you have ministered to the saints, and do minister (Hebrews 6:10).*

*December 25, 2002*



# Certificate of Completion

**This is to certify that:**

**Eugene Agina**

Has successfully completed 93 hours of
Vocational Training in

**Residential Print Reading**

**In Witness Thereof the Undersigned
Given this 11th day of December 2002**

**Todd Nickoles,**
**Vocational Training Instructor**

**Phil Geistfeld,**
**Supervisor of Education**

# Certificate of Achievement

This certificate is Presented to

*Eugene Agina*

in recognition of completion of

## CDL Class

12-17-02

Date

Education Dept

# Federal Correctional Institution

### ELKTON, OHIO

## This Certifies That

### EUGENE AGINA

*has satisfactorily completed the requirements for*

### DRUG EDUCATION

*And is hereby awarded this*



# Certificate
## of
# Completion

on this ___THIRTIETH___ day of ___APRIL___ year ___2002___

**DEBRA YOVICHIN, MA**
**DRUG TREATMENT SPECIALIST**

Style 29/R Completion © 1988 S.C.E.  P.O. Box 66008  Portland, OR 97290

FMC DEVENS

ADVANCED COMPUTER APPLICATIONS III

The Education Department is pleased to present this certificate to

Eugene Agina

For successfully completing 250 hours of classroom study and computer lab workshop in Advanced Microsoft Office 2000 Techniques

In Witness thereof, the undersigned given this 23rd day of April, 2004.

E. Boyack
Computer VT Instructor

Lance Cole
Supervisor Of Education

# DDC Testing Center
## Certificate of Achievement

(DDC)

On this day, January 29, 2004,

**Eugene Agina**

achieved a score of 75% on the

**Word 2000** exam.

Authorized Signature



**THE DEVENS**

# EXPLORATORY COMPUTER APPLICATIONS

## XII

The Education Department is pleased to present this certificate to

*Eugene Agina*

For successfully completing 100 hours of classroom study and computer lab workshop in Introduction to Microsoft Office 2000 In Witness thereof, the undersigned given this 26th day of September, 2003.



Evan Boyack
Computer VT Instructor



Lance Cole
Supervisor Of Education



### CONSULATE GENERAL OF NIGERIA
### NIGERIA HOUSE
828 SECOND AVENUE, NEW YORK, NEW YORK 10017

Ref: No. 500/93/C/Vol.9    TELEPHONE 212-808-0301    August 13, 2004

Mr. Lawrence Ndubisi Aginar
1944 Tallyrand
Wichita, KS 67206

### RE: EUGENE AGINA – MEDICAL CONDITION

    I am directed to acknowledge receipt of your letter dated August 3 2004, on the above-mentioned subject and to inform you that the health condition of Mr. Eugene Agina is also a concern to the Consulate.

    The Consulate has noted the contents of the letter and your request is receiving attention.

M.M. Hezekiah-Okaa (Mrs)
For: Consul General

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) DR. HOWARD (M.D.) | DATE: 01-12-04 |
|---|---|
| FROM: EUGENE AGINA | REGISTER NO.: 09094-041 |
| WORK ASSIGNMENT: | UNIT: J-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I WOULD LIKE TO FORMALLY INFORM YOU
ABOUT THE PROBLEMS I AM ENCOUNTERING FOLLOWING
MY HIP REPLACEMENT SURGERY ON JUNE 16, 03.
① MY OPERATED LEG IS NOW NOTICABLY LARGER.
② NOT ABLE TO FLEX MY HIP
③ NOT ABLE TO TIE MY SHOE
④ NOT ABLE TO SIT AT 90°

PlS, I WOULD LIKE TO KNOW, IF THERE'S
ANY REMEDY TO MY SITUATION.
THANKS
Eugene Agina

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86
                                                    and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Diz. NEWLAND | DATE: JAN 01, 04 |
|---|---|
| FROM: Eugene AGinA | REGISTER NO.: 09094 - 041 |
| WORK ASSIGNMENT: C C S | UNIT: J-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

THIS IS A FOLLOW-UP TO MY PREVIOUS REP-
OUT OF 11-25-03. WHERE I COMPLAINED ABOUT THE
EXTREME LIMITATIONS I AM EXPERIENCING SINCE
MY HIP-REPLACEMENT SURGERY.
WELL, ON DEC. 21, 03, MY THERAPIST MR.
COWHER TERMINATED MY THERAPY DUE TO LACK
OF ANY IMPROVEMENT.
RIGHT NOW, I'M STILL NOT ABLE TO ① FLEX MY
HIP ② EVEN TIE MY SHOE ③ NOR SIT AT 90°.
PLS, I WOULD LIKE TO KNOW, IF THERE'S
ANY REMEDY TOWARD MY SITUATION. Eugene Agina

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                             and BP-S148.070 APR 94

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.    Title of case (name of first party on each side only)_____

2.    Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See

local rule 40.1(a)(1)).

☐    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☐    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

☐    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
380, 385, 450, 891.

☒    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
690, 810, 861-865, 870, 871, 875, 900.

☐    V.    150, 152, 153.

3.    Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
this district please indicate the title and number of the first filed case in this court.

_____

4.    Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐    NO ☒

5.    Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See
28 USC §2403)

YES ☐    NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐    NO ☐

6.    Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐    NO ☒

7.    Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
40.1(d)).

YES ☒    NO ☐

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☒    Central Division ☐    Western Division ☐

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
agencies, residing in Massachusetts reside?

Eastern Division ☐    Central Division ☐    Western Division ☐

8.    If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
yes, submit a separate sheet identifying the motions)

YES ☐    NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____

ADDRESS _____

TELEPHONE NO. _____

(Coversheetlocal.wpd  - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

**DEFENDANTS** Bruce Chadbourne, off a Director

DHS/BICE, et. al.  Interim Field

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    Suffolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Pro Se

Attorneys (If Known)

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff |
|---|---|---|

(For Diversity Cases Only) and One Box for Defendant)

|  |  | | DEF | | DEF |
|---|---|---|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State  ☐ 1  ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐ 2  ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
|  |  | Citizen or Subject of a  ☐ 3  ☐ 3  Foreign Country | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIW C/DIW W (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

|  |  |  |  |  | Appeal to |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 District Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241

Petitioner is detained by Bureau of Immigration + Customs Enforcement

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint: JURY DEMAND:  ☐ Yes  ☐ No |
|---|---|---|---|

**VIII. RELATED CASE(S)** (See instructions):
**IF ANY**

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____