UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eugene O. Agina, Petitioner | : |
| v. | : CIVIL ACTION # 05-CV11234-NMG |
| Michael Chertoff et al, Respondents | : |

### PETITIONER'S REJOINDER TO RESPONDENTS' MOTION TO DISMISS

Now comes Eugene O. Agina ("Petitioner") who moves this court challenging the lawfulness of his detention by Bureau of Immigration and Customs Enforcement ("ICE"). Petitioner recieved a final order of removal on 07/11/1994. His 90-Day statutory removal period under the relevant statute, 8 U.S.C § 1231(a)(6), expired on 07/29/2004; ninety-days after Petitioner was paroled to ICE. This case is controlled by Zadvydas v. Davis, 533 U.S 678, 121 S.Ct. 2491 (2001), in which Supreme Court ruled that indefinate detention is not authorized by the statute where there is no significant likelihood of removal in the reasonably foreseeable future.

### STATEMENT OF FACTS

BACKGROUND: Petitioner was born in Nigeria on 07/06/1960. He emigrated to United States on 03/16/1991 on a visitor's visa. On 02/04/1994 ICE (erstwhile INS) commenced his removal proceedings under §§ 241(a)(1)(b) and 241 (a)(2)(b)(i) respectively. On 07/11/94 Petitioner was ordered removed to Nigeria by an Immigration Judge. Petitioner waived the appeal and thus the final order of removal became final.

On 12/07/1993, Petitioner pled noro cotendere and was sentenced under 90-108 statute of North Carolina to five (5) year imprisonment. While incarcerated Petitioner started having problems with his hip; a malady that required a complete hip replacement surgery. He was transferred to Fort Davens in Ayer, Massachusetts for Surgery. The surgery was carried out at Umass Medical Center in Leominister, Massachusetts and Petitioner was sent back to prison to recuperate. During the Post-Op rehab period, Petitioner was diagnosed with major complications which required surgery on the same hip. Unfortunately, around the same time, Petitioner was paroled to ICE on 04/29/2004 for deportation purpose. During this time, Petitioner expressed his Medical concern to General Consul of Nigeria Embassy because ICE had tacitfully denied his medical requests on numerous times. Nigerian Consul adopted this concern and refused to issue a travel document.

- 1 -

On 09/08/2004, Petitioner was served with Notice of Failure to Comply alleging, inter alia, Petitioner's lack of cooperation with Nigerian Embassy in providing a travel document. Furthermore, and on the same vein, ICE warned Petitioner that he will be criminaly prosecuted under 8 U.S.C § 1253(a) "if [he] wasn't removed from United States by 10/29/04.

On 11/03/2004, deportation officer Ms. Claudia English apprised the Petitioner that ICE had been unsuccessful in obtaining his travel documents due to the medical concern that Petitioner had expressed to them. Petitioner asked her if he will be released and that's when she admonished him that he won't be getting released despite the fact that Nigeria Embassy had declined Petitioner's repatriation request. She reiterated the same misconduct which had been alleged on the Failure to Comply Notice saying that the Service didn't care about his malady as long as he's been cleared for travel. Tersely, she said "I believe you are acting to prevent your own removal." Petitioner asked her why they (ICE) don't want him to get treated, and that's when she hanged up on him.

On 04/12/2005, Petitioner was transported to Batavia, New York for a physical exam hence an emergency removal. Representatives from both sides were present during the physical exam. However, due to the pain he was experiencing Nigeria Embassy refused to issue travel documents until Petitioner's medical needs had been satisfactorily met. The doctor who was doing the physical exam also recommended an Magnetic Imaging Resonnance ("MRI") because Petitioner was in so much pain and needed a heavy dose of pain medication to alleviate the pain. That was never done either and Petitioner was returned back to Suffolk County House of Correction in Boston, MA by the Service.

On the first week of August, Petitioner go a phone-call from Nigerian Embassy saying that the Service was willing to compromise. They (ICE) had proposed that Petitioner will be released for three to four (3-4) months inorder to take care of his medical treatment at his own expense, and in return the General Consul will issue his travel documents whereby Petitioner will surrender own his own accord when that time comes for removal. However, that proposal is not binding until (i) the Ambassador of the Republic of Nigeria agrees to it, (ii) Petitioner has been freed, and (iii) His medical treatment has been satisfactorily met. Petitioner acquiesced to the proposal.

### MEMORANDUM OF LAW APPLICABLE TO PETITIONER'S CUSTODY STATUS

On 06/28/2001, the Supreme Court of United States held in Zadvydas v. Davis, supra, that the Immigration & Nationality Act ("INA") § 241(a); 8 U.S.C § 1231(a) authorizes ICE to detain aliens with a final order of removal for a period necessary to carry out removal. In particular, ICE may detain an alien while it carries out his removal for a 90-Day period after the removal order becomes final. INA § 241(a)

- 2 -

The Supreme Court further held in Zadvydas that six months is a presumptively reasonable period of time to effectuate removal. Under Zadvydas, " once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." Id at 2503. In such cases, " the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances ..."

In response to Zadvydas, the United States Attorney General issued interim administrative regulations in November 2001. See 8 C.F.R §§ 1241.13 - 1241.14 (2001). The interim regulations instructs ICE to first consider release requests from persons with final order of removal under the existing 8 C.F.R § 1241.4 custody review procedures. Those procedures call for the local field office director to conduct a detainee's initial review and then refer the case to Headquarters Post-Order Detention Unit ("HQPDU") for subsequent custody reviews. See 8 C.F.R § 1241.4

For aliens who are subject to Zadvydas, ICE is instructed to release the alien if there is no significance likelihood of removal in the reasonably foreseeable future, absent special circumstances justifying continued detention. 8 C.F.R § 1241.13(g)(1)

## ARGUMENTS

The General Consul of Nigeria has adamantly refused, on numerous times, to issue Petitioner's travel documents until his medical treatment has been satisfactorily taken care of. Mr Allan Sweeney's declaration regarding the issuance of a travel document has no merit. What the officer failed to disclose is the subterfuge that ICE has up on it's sleeves.

On the first week of August, I was transported downstairs because someone wanted to talk to me on the phone. It was the General Consul of Federal Republic of Nigeria Mr. Umar. He apprised me of the compromise proposal that ICE came up with. Mr. Umar specifically said that ICE has agreed to release me for 3-4 months so that I can get the medical treatment at my own expense. In return Consul will issue my travel documents. I agreed to the proposal which is not binding until (i) The Ambassador agrees to it, (II) I'm free from jail, and (iii) my medical needs have been satisfactorily met.

The "recent developments" which Respondents are now trying to claim is that self-serving proposal and the scheduled meeting with the ambassador was to talk about it. Now they (ICE) are using that proposal inorder to circumvent the real issue here: That travel documents will not be issued until my medical needs are satisfactorily met.

Looked at in a different way, this case stands on all fours, factually, with Okwilagwe v. INS, 2002 U.S Dist. LEXIS 3596 (N.D Texas, March 2002). Petitioner in that case had contracted spinal tuberculosis while in INS' custody. His own doctor cleared him to travel but Petitioner expressed his reservation about returning to Nigeria due to his health. Nigerian

Embassy adopted these concerns and refused to issue a travel document. In granting habeas petition, the court stated the apparent medical concern which General consul of Nigeria shares in refusing to have him returned to Nigeria.

The same case applies here. Petitioner was xxxxx diagnosed with hip complications while under the Federal Bureau of Prisons, right before he was paroled to INS' custody. Respondents has acted with indifference when it comes to his badly needed surgery. Petitioner communicated this problem to General consul of federal Republic of Nigeria and the travel documents hasn't been forthcoming since then. Embassy of the Republic of Nigeria has adamantly refused to issue a travel document until Petitioner's medical needs are satisfactorily met.

ICE has used every trick in the book inorder to escape treating the Petitioner. (i) When Petitioner said that he couldn't travel until his hip replacement surgery was done, ICE responded by bring him to a physician assistant who 'cleared him for travel.' Petitioner informed his Embassy that he had been cleared by the PA to travel but the Embassy didn't barge. (ii) When that route became unavailing, Respondents served the Petitioner with a Notice of Failure to Comply accussing him of frustrating his own removal. Accordingly, Petitioner rebutted those unfounded accusations by saying that such truthful statements could not be misconstrued as lack of cooperation. On 07/14/2004 Respondents sent Agent O'neil inorder to confirm and extract Petitioner's truthfulness. Right after the interview Agent O'neil called Petitioner's deportation officer Ms. Claudia English and left a message on her voicemail confirming/affirming Petitioner's cooperation. (iii) Respondents has also accused the Petitioner of feigning his infirmity. On 04/13/2005, Respondents took the Petitioner to Bativia, New York, for a physical exam infront or at the presence of a representative of Embassy of the Federal Republic of Nigeria. Representatives from both sides i.e ICE & Embassy were present during the physical exam. Due to the excruciating pain that Petitioner was experiencing, the Orthopedist had to stop and prescribe a heavy dose of painkillers to alleviate Petitioner's pain. General consul refused to issue a travel document. (iv) The last straw which broke the camels back is the recent self-serving proposal/compromise that ICE came up with and which is now trying to use inorder to trump it's burden. Succinctly, the proposal is not binding until the Ambassador agrees and approves it. Respondents are using this subterfuge inorder to overcome their burden.

Respondents had sixteen (16) unencumbered months to remove Petitioner. If they had just chose to treat his malady, by now everything would have been accomplished and most likely Petitioner would be in some village in Nigeria minding his own business. But rather than do what is right and noble, the Respondents wants to circumvent their mess through short-cut. The Nigerian Embassy has evinced on numerous times that it will not issue a travel document until Petitioner's medical needs are satisfactorily met.

## PETITIONER NEEDS NOT MAKE A SHOWING THAT HIS REMOVAL IS IMPOSSIBLE

Although some possibility of removal may exist, Petitioner's period of post-order removal detention has been so long that a remote non-specific possibility doesn't satisfy the Respondents burden of proof. See Mohamed v. Ashcroft, 2002 U.S Dist. LEXIS 16179 at *3 (W.D Wash., April 15, 2002)(adopting magistrate judge's finding that government didnot meet Zadvydas burden because it provided no information regarding how or when it expected to obtain documents or cooperation from a foreign government).

Moreover, an alien who has been detained beyond the presumptive six-months period should be released when the Respondents are unable to present a documented confirmation that the foreign government at issue has/will agree to accept the particular individual in question. See Agbada v. John Ashcroft, 2002 U.S Dist. LEXIS 15797 (D.Mass. AUGUST 22 2002) (COURT "WILL LIKELY GRANT" HABEAS PETITION AFTER FOURTEEN (14) MONTHS IF THE RESPONDENTS ARE UNABLE TO PRESENT DOCUMENTED CONFIRMATION THAT NIGERIA HAS AGREED TO PETITIONER'S REPATRIATION)(EMPHASIS INCLUDED); MOHAMED V. ASHCROFT, SUPRA, (GRANTING WRIT OF HABEAS PETITION WHERE LACK OF DEFINATE ANSWER FROM THE FOREIGN CONSULATE INDICATES THAT NO REMOVAL WAS LIKELY IN THE REASONABLY FORESEEABLE FUTURE).

PETITIONER RAISES CHALLENGE THAT EMBASSY OF THE FEDERAL REPUBLIC OF NIGERIA HAS NOT SWAYED IN IT'S STANCE REGARDING THE ISSUANCE OF A TRAVEL DOCUMENT, AND THAT'S THE CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER ZADVYDAS.

THE SUPREME COURT IN ZADVYDAS RECOGNIZED THE SIX-MONTH PERIOD AS THE PREREQUISITE FOR FILING HABEAS. BUT ON THE SAME VEIN THE COURT EVINCED THAT "AS THE PERIOD OF POST-REMOVAL CONFINEMENT GROWS, WHAT COUNTS AS REASONABLY FORESEEABLE FUTURE WOULD CONVERSELY, HAVE TO SHRINK," AND AFTER SIX-MONTH PERIOD, ONCE AN ALIEN PROVIDES A GOOD REASON TO BELIEVE THAT THERE IS NO SIGNIFICANT LIKELIHOOD OF REMOVAL IN THE REASONABLY FORESEEABLE FUTURE, THE GOVERNMENT MUST RESPOND WITH **OBJECTIVE** EVIDENCE SUFFICIENT TO REBUT THAT SHOWING (EMPHASIS INCLUDED).

OFFICER ALLAN SWEENEY'S DECLARATION EVIDENCE ALONE IS INSUFFICIENT TO CARRY OUT THIS BURDEN. THAT EXHIBIT SHOULD NOT BE ALLOWED AS PART OF THE OBJECTIVE EVIDENCE REQUIRED TO REBUT THE SHOWING BECAUSE IT (OR HE) FAILED TO DISCLOSE THE PROBATIVE MATERIAL EVIDENCE. WITHHOLDING OF PROBATIVE MATERIAL, WHICH IS EXCULPATORY IN THIS CASE, SHOULD NOT BE TOLERATED BY COURTS.

The "RECENT DEVELOPMENTS" which RESPONDENTS CLAIM HAS TRANSPIRED IS THE SELF-SERVING PROPOSAL WHICH THE SERVICE IS NOW TRYING TO DEPEND ON IN ORDER TO TRUMP THE "NO SIGNIFICANT LIKELIHOOD OF REMOVAL..." BURDEN. It's AUGUST 23RD 2005 AS I WRITE AN THE AMBASSADOR OF THE EMBASSY OF FEDERAL REPUBLIC OF NIGERIA HAS YET TO ACCEPT THAT PROPOSAL.

FINALLY, RESPONDENTS PURPORT THAT THERE IS CONTROVERSY SURROUNDING PETITIONER'S INFIRMITY. LET'S CALL A SPADE A SPADE BUT NOT A BIG SPOON. PETITIONER IS SICK, PERIOD. HE WAS DIAGNOSED WITH THE ON-GOING COMPLICATIONS SHORTLY BEFORE HE WAS PAROLED TO INS' CUSTODY. FEDERAL BUREAU OF PRISON HAS SINCE ADVISED PETITIONER TO SEEK MEDICAL REQUESTS FROM RESPONDENTS SINCE THEY ARE THE ONES WHO NOW HAS PETITIONER'S CUSTODY AND/OR JURISDICTION. PETITIONER'S MEDICAL REQUESTS FOR HIS BADLY NEEDED SURGERY HAS BEEN DENIED ON NUMEROUS TIMES.

WHEN PETITIONER EXPRESSED HIS MEDICAL CONCERNS TO THE AMBASSADOR OF NIGERIA, THE GENERAL CONSUL RESPONDED BY REQUESTING THE SERVICE TO FURNISH THE EMBASSY OF NIGERIA WITH PETITIONER'S MEDICAL RECORDS. THOSE RECORDS TOOK AN UMPTEENTH TIME BEFORE BEING MADE AVAILABLE TO THE GENERAL CONSUL, AND WHEN THE EMBASSY DELVED INTO PETITIONER'S MALADY IT REFUSED TO ISSUE PETITIONER'S TRAVEL DOCUMENT UNTIL HIS MEDICAL NEEDS HAVE BEEN SATISFACTORILY MET. RESPONDENTS CONTINUE TO SHOW A FLAGRANT INDIFFERENCE WHEN IT COMES TO PETITIONER'S INFIRMITY.

## CONCLUSION

BASED ON THE FOREGOING REASONS, RESPONDENTS' MOTION TO DISMISS SHOULD FAIL. RESPONDENTS CANNOT EXECUTE PETITIONER'S REMOVAL ORDER WITHIN THE REASONABLY FORESEEABLE FUTURE, AND THERE IS NO STATUTORY AUTHORITY FOR ICE TO DETAIN HIM.

SIGNED UNDER THE PAINS & PENALTIES OF PERJURY.

RESPECTFULLY SUBMITTED,

_Eugene Agina_
EUGENE O. AGINA, Pro Se

-6-

CERTIFICATE OF SERVICE.

I, EUGENE O. AGINA, HEREBY CERTIFY THAT ON _____ (DATE) I CAUSED A TRUE COPY OF "PETITIONER'S REJOINDER TO RESPONDENTS' MOTION TO DISMISS" TO:

> FRANK CROWLEY
> SPECIAL ASSISTANT U.S ATTORNEY
> DEPARTMENT OF HOMELAND SECURITY
> P.O. Box 8728
> J.F.K STATION
> BOSTON, MA, 02114.

BY PLACING A COPY IN THE MAILBOX AT THE FACILITY WHERE I AM BEING DETAINED.

SINCERELY,

*Eugene Agina*
EUGENE O. AGINA
SUFFOLK COUNTY HOUSE OF CORR.
20 BRADSTON STREET, UNIT 8-9
BOSTON, MA, 02118